further held by the trial court, the point in the termination of the old road at which the center line of the new road is to commence must also mean the center line of the old road as well, so that the two roads shall be continuous, and not meet with an offset or jog of about one-half the width of the new road, as is claimed by appellant. The present difficulty undoubtedly arose from a failure to locate properly the center line of the old road at its termination. This was erroneously taken to be west of its true location, as afterwards shown in this action to be fixed by an iron bolt, and consequently the first course laid down was different from what it would have been had the starting point been properly located. There is nothing, however, either in the petition or the commissioners' report, from which a different first course can be legally inferred by us, and inasmuch as the starting point mentioned in the decision refers to a point capable of correct location the road cannot now be elsewhere located. Unless the road as ordered be altered by some new proceeding, it is accordingly the highway commissioner's duty to lay out the road as described in the report, except that by section 200 of the highway law he cannot lay it out through this building until specially permitted by the court. Upon an application for leave to lay a road through this house, the court could perhaps make some fair adjustment by consent of parties. Damages have, as stated, been awarded Mr. Beck in the sum of $40. If an application should be made to lay the road through the land occupied by the house, it is not necessary here to decide whether he could be allowed any further damages than have been awarded in the order already laid. In Matter of Field, 61 App. Div. 618, 70 N. Y. Supp. 677, it is held that a road should not be laid out through a house or garden when the owner offers a full right of way elsewhere, which is but a few rods out of the direct course.

The injunction should be modified, so as to enjoin the commissioners of highways from constructing that part of the road which passes through plaintiff's house, and, as thus modified, the order should be affirmed, without costs to either party.

Judgment modified as per opinion, and, as so modified, judgment and orders unanimously affirmed, with one bill of costs to respondents. Order affirmed, with $10 costs and disbursements. All concur, except HOUGHTON, J., not sitting.

---

## HIRSH v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

DAMAGES (§ 124*)—BREACH OF CONTRACT—PREVENTION OF PERFORMANCE.

Where plaintiff's assignor had a contract for purchase and removal of iron from a building, if he was wrongfully prevented by the seller and other parties to the contract from removing the iron within the time limited by the contract, his measure of damages would be the difference between the market value of the portion not removed and the agreed price thereof, less the cost of labor for removal, and not what he would in fact

---

have realized because of more favorable contracts made by him with third persons for sale and removal of the iron.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 326–338; . Dec. Dig. § 124.*]

Appeal from Trial Term, New York County.

Action by Richard Hirsh against the Press Publishing Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Harry M. Marks, for appellant.
Emanuel S. Cahn, for respondent.

MILLER, J. On the 8th of October, 1907, one John E. O'Connor purchased of the defendant its elevator plant and steam pumps in a building known as the World Building. The agreement provided:

"It is understood that we are to remove the freight elevators and machinery immediately on acceptance of this letter, and the rest of the elevators and pumps immediately upon notice from you that they are out of commission. You to run over all of the material to us on or before the 1st day of March, 1908. It is further understood that all of this material is to be removed without inconvenience to the Press Publishing Company or their tenants under the superintendence of your representative within fifteen (15) days after notice from you that the said material is ready to be removed, and after said fifteen (15) days all our right and title to said machinery shall cease.

"John E. O'Connor."

The contract was assigned to D. Lowey & Co. on the 15th of October. The assignee started in to remove the material some time in November, but discontinued the work pursuant to an arrangement with one Williamson, the defendant's superintendent, that the latter would notify them when to resume. On the 29th of February Williamson notified said assignee to resume work, and work was resumed on March 2d. On the 30th of March a dispute arose, which resulted in said assignee discontinuing the work of removal. There is a dispute whether that was done pursuant to the order of said Williamson. The plaintiff brings this action as assignee of said D. Lowey & Co. to recover for the material not removed.

It is to be observed that all material was to be removed within 15 days after notice. It does not appear to what the delay beyond the 15 days was due. That question does not seem to have been raised on the trial, and was not submitted to the jury. We must assume on this appeal that the plaintiff's assignor had the right on the 30th of March to continue the work of removal, and that it was prevented by the wrongful act of the defendant. The important question, then, is the question of damages.

Obviously the plaintiff was entitled to the value of the material not removed, less the reasonable cost of removal. The plaintiff's witness, Reichman, made a rough estimate that there were 300 tons of iron, and 145 tons had been removed; so the plaintiff claimed for 155 tons at $10 a ton, for an elevator shaft, and for pumps claimed to have been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

worth $300 and $3,300, respectively, less the cost of removal. The verdict was for $2,700. The defendant's evidence tended to show that it would cost all the material was worth to remove it, and a careful reading of the record leaves a doubt in my mind whether that may not have had something to do with the dispute of March 30th, and with the determination of the plaintiff's assignor to abandon the work. The plaintiff was permitted to prove, over the objection and exception of the defendant, that his assignor had made a contract with Heinrichs & Denning to remove the material covered by the contract for $1,500. At the close of the charge the following occurred:

Plaintiff's Counsel: "Having in mind your honor's remarks that there was testimony in this case that it would cost more to take out the iron than it was worth, I ask your honor to charge that, if the jury believes that the plaintiff had a contract for the removal of all the iron, including that which was left in the building, that what it would ordinarily cost to remove it is not an element in this case."

The Court: "I so charge."

(Exception by the defendant.)

Defendant's Counsel: "I ask your honor to charge that in such a case as this the measure of damage is the difference between the market value and the agreed price, less the cost of labor for removal."

The Court: "I decline to charge that."

(Exception by the defendant.)

These rulings require a reversal of the judgment. It is unnecessary to cite authority upon the proposition that the damages recoverable for breach of contract are such as may fairly be said to have been within the contemplation of the parties. While, of course, the certainty of proof required may vary according to the circumstances and necessities of the case, it has never been held, so far as we are aware, that a party claiming damages may have the benefit of favorable contracts made by him with third parties after the making of the contract for breach of which damages are claimed. As well might the plaintiff have been permitted to show that some one had agreed to remove the material for nothing, or that he had contracted to sell it for several times its market value, as a basis for recovering, not the value of the property, but what he would in fact have realized by reason of his favorable contract. Such damages are not allowable. Masterton v. Mayor, 7 Hill, 61, 42 Am. Dec. 38; Story v. N. Y. & Harlem R. R. Co., 6 N. Y. 85; Devlin v. Mayor, 63 N. Y. 8; Brodie v. Fost, 123 App. Div. 749, 108 N. Y. Supp. 414.

The cases cited by the respondent of contracts to manufacture and deliver goods are not in point. In such cases the rule doubtless is that the measure of damages is the difference between the contract price and the cost to manufacture and deliver. These cases are exceptions to the general rule that loss of profits cannot be recovered; but, even in them, loss of profits cannot be based on future bargains or speculations.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.